UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

RECEIVED

FEB 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

_____

)

YOLANDA SWIFT                                )

      Plaintiff,

      vs                                   )

)

STEVEN C. PRESTON, Administrator, U.S.        Civil Action No. 07-cv-1727 (ESH)

Small Business Administration, HECTOR V.

BARRETO, JR., MICHAEL L. BARRERA, )

STEPHEN GALVAN, DAVID A. JAVDAN,

ERIC S. BENDERSON, JOHN W. KLEIN, )

DELORICE FORD, AND MONIQUE              )

FORTENBERRY,                             )

      Defendants                        )

_____)

## PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION TO DISMISS COUNTS

## III THROUGH VI OF THE COMPLAINT

1

## PLAINTIFF'S STATEMENT OF RELEVANT FACTS

In 1997, Plaintiff, an African American female attorney applied for the Senior

Executive Service Career Reserved (SES) position of Associate General Counsel for

Financial Law in the Office of General Counsel at SBA (OGC) under Vacancy

Announcement Number 97-02.  She was a finalist for the position; she was not selected;

and the position was not filled.  Subsequently, plaintiff was instead hired as a senior

attorney, Attorney Advisor/Assistant General Counsel for Asset Sales at that agency in

November 1998 (GS-15).  In November 2000, Plaintiff applied for the same SES position

when it was re-advertised as the Associate General Counsel for Financial Law and

Lender Oversight under Vacancy Announcement Number 00-11.  Again, she was a

finalist for the position; she was not selected; and the position was not filled.  During

1997 until April 2003, the Office of Financial Law was managed by the Deputy

Associate General Counsel for Financial Law.

From March 2000 until April 2003, Plaintiff was the Acting Deputy Associate

General Counsel for Financial Law and Lender Oversight in OGC.  As the Acting Deputy

Associate General Counsel she managed the attorneys who represented the Agency on all

financial law and lender oversight matters.  She performed all of the duties and job

responsibilities in the position description for the position that is the subject of this

lawsuit, the SES position Associate General Counsel for Financial Law and Lender

Oversight and received the highest available performance ratings each year she

performed such duties and responsibilities.

In April of 2003, the General Counsel, Defendant Javdan and his senior mangers

including Nina Levine, the selectee for the position that is the subject of this action,

defendants Klein and Benderson and upon information and belief, one or all of Does I-VI re-organized OGC. When the reorganization was announced, Defendant Javdan stated that two SES positions, the Associate General Counsel for General Law and the Associate General Counsel for Financial Law and Lender Oversight would be "filled on a permanent basis after an open competition period to be conducted at a later time." Ex-2 Announcement of Reorganization. As part of the reorganization, Plaintiff's position as Acting Associate Deputy General Counsel for Financial Law and Lender Oversight was eliminated and a rotation of employees into the SES position of Acting Associate General Counsel for Financial Law and Lender Oversight was commenced. Consequently, Plaintiff's management and other responsibilities were substantially diminished. On several occasions thereafter, Defendant Javdan and at least one Deputy General Counsel stated that he was taking away Plaintiff's responsibilities and creating a rotating Acting Associate General Counsel for Financial Law and Lender Oversight position so that Plaintiff would not have an "unfair advantage" over other attorneys at the SBA when the SES position was posted for permanent hiring. However, at the same time, Defendant Javdan chose not to rotate the SES Acting Associate General Counsel for General Law position (vacant since January 2003 and is still vacant) and did not remove, at that time, the Caucasian attorney who had managed the General Law division as Acting Associate General Counsel for General Law during the same period of time that Plaintiff served as Acting Deputy Associate General Counsel for Financial Law and Lender Oversight. Instead, for a period of time, that Caucasian remained in her acting position.

        In September 2004, Plaintiff applied for the same position which was re-advertised again as the Associate General Counsel for Financial Law and Lender

Oversight under Vacancy Announcement Number SBA-SES-04-06. This time again, Plaintiff was deemed qualified and in fact, made the list of "Best Qualified" candidates for the position. The screening panel, including defendants Klein and Benderson, passed her on to the interview panel with three other candidates. Plaintiff was interviewed by the panel of three senior executives, defendants Klein, Benderson and Ford. On information and belief, defendants Klein and Benderson's placement on the interview panel as well as the screening panel for the same position was a violation of SBA and Office of Personnel Management policy and law regarding open and fair competition for career SES positions.[1]

Despite the fact that she was on the interview panel and gave a statement to the EEO investigator for Plaintiff's discrimination claim, Defendant Ford authorized under her signature the Final Agency Decision (FAD) in this case finding no discrimination when she herself was a party to and involved in the matter under review.[2]  In addition to violating law and policy, the facts set forth in this paragraph are a substantial departure from longstanding agency practice.

In February 2004, Plaintiff met with the General Counsel, Defendant Javdan and expressed concern about the failure of OGC management to provide a promotion to an African American attorney in the Office of Financial Law and Lender Oversight based on Plaintiff's promotion recommendation as the supervisor. Defendant Javdan's 2004 action was inconsistent with his actions in 2002 when Defendant Javdan had promoted

---

[1] In other selection processes for competitive service positions at the SBA during the same time period, SBA officials expressed and maintained a practice of not allowing an employee to serve on the evaluation panel and the interview panel for the same position.

[2] Rule 1.7(b) of the District of Columbia Rules of Professional Conduct states that a lawyer shall not represent a client with respect to a matter if the lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial business, property or personal interests.

4

Caucasian attorneys based on Plaintiff's recommendation and other Caucasian attorneys based upon recommendations of their supervisors. During the meeting with Defendant Javdan in February 2004, Plaintiff expressed concern that the failure to promote her employee was racially biased and continued to express such concern continuously thereafter.

On information and belief, no African American attorney has ever held a non-political SES career position in OGC. On information and belief, several qualified African American candidates have applied for and have been rejected for such positions as well as GS 15 level positions in OGC and have been repeatedly not selected. Plaintiff received the highest available performance ratings during the entire period of time she has been employed at the SBA.

The Associate General Counsel for Financial Law and Lender Oversight position was rotated from April 2003 until January 2005. In January 2005, a Caucasian, female, Nina Levine, was selected for the Associate General Counsel for Financial Law and Lender Oversight position (Selectee). Selectee never rotated or served as Acting Associate General Counsel for Financial Law and Lender Oversight. Plaintiff actually performed the duties and responsibilities of the position for over three years and received the highest available performance ratings during the entire period of time she has been employed at the SBA. On July 22, 2005, Plaintiff filed a timely Complaint of Discrimination with the EEO & CRC alleging that she was subjected to unlawful employment discrimination on the bases of race and retaliation in violation of Title VII of the Civil Rights Act (42 U.S.C. § 2000e *et seq.*) and related regulations (29 C.F.R. § 1614.101 *et seq.*).

By letter dated September 19, 2005, the EEO & CRC accepted for formal investigation Plaintiff's complaint that she was discriminated against on the bases of race and retaliation when she was not selected for the position of Associate General Counsel for Financial Law and Lender Oversight in 2005. An independent Equal Employment Opportunity contractor (Investigator) was assigned to conduct and complete an investigation of the allegations in Plaintiff's complaint within 180 calendar days of the issuance of the EEO & CRC letter. Defendants Baretto, Barrera, Benderson, Galvan, Javdan and Klein were notified regarding the investigation.[3]

The investigation was not completed in 180 days. Investigator attempted to investigate Plaintiff's allegations of non-selection for the SES Associate General Counsel for Financial Law and Lender Oversight position and her retaliation claim over the course of twelve months, from October 2005 until October 2006. During the pendency of the investigation and from reading affidavits and facts found in the resultant Report of Investigation (ROI), Plaintiff discovered the conspiracy alleged herein and that Defendants Galvan, Javdan and Barrera did not provide information requested by the Investigator or make themselves available to the Investigator. See Ex- Report of Investigation attached as Exhibit  .

The Report of Investigation included a sworn statement from Defendant Barreto that he selected the Selectee Levine by ratifying a recommendation of the SBA Executive Resources Board (ERB). However, the ROI included evidence that the ERB never met to

---

[3] SBA SOP 37-13-2, Chapter 2, para 5 states the Principal Responding Officials and the Program head are notified of the acceptance of the Complaint and the pending investigation.
SOP 37-13-2, Chapter 2, para 6 states the Agency and any employee of a federal agency shall produce such documentation and testimonial evidence as the investigation deems necessary.

take any personnel action or review any candidate for the position in question as required by federal law, the United States Office of Personnel Management (OPM) regulations and SBA Standard Operating Procedures. See Exhibit-1, excerpts from the ROI. (Exhibits attached to this Memorandum are hereinafter referred to as Ex-#). Therefore, Defendant Barreto ratified something that did not occur.

Defendant Fortenberry informed the investigator the ERB never met to consider the finalists or any of the applicants for the Associate General Counsel for Financial Law and Lender Oversight position as required by federal law and regulations. See Ex-2.[4]

Defendant Galvan endorsed or sponsored a memo from Defendant Barrera to Administrator Barreto that suggested that the ERB was making a referral or recommendation of candidates for the Associate General Counsel for Financial Law and Lender Oversight position when in fact the ERB never met to review the candidates. Ex-3. Defendant Barrera's memo to Defendant Barreto. Mr. Barrera knew that the ERB never met nor made any referral or recommendation of candidates because he was the Chairman of the ERB at the time the memorandum was written and given to the Administrator. Ex-4, a list of the members of the ERB in 2004 and 2005. Defendant Galvan also knew the ERB never met to review the candidates because he was a member of the ERB at the time the purported referral was made to Defendant Barreto. Defendant Javdan was also a member of the ERB at all relevant times during the selection process and the EEO investigation. Defendant Javdan created the Associate General Counsel Financial Law and Lender Oversight position, he established the rotation of the position and decided which employees would rotate in the position before

---

[4] Rule 8.4 of the District of Columbia Rules of Professional Conduct states it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation or engage in conduct that seriously interferes with the administration of justice.

7

posting it. Defendant Javdan decided when to fill the SES Associate General Counsel for Financial Law and Lender Oversight position and not to post or fill the Associate General Counsel for General Law position. Defendant Javdan chose most if not all of the people on the selection panel and the interview panel. He gave final approval of the selectee. Ex-5. Additionally, as a member of the ERB, Defendant Javdan knew the ERB did not meet to consider the applicants for the position as required under the applicable statutes and regulations.

Upon information and belief Defendants Galvan, Fortenberry and/or Does I-VI also substantially slowed and ultimately temporarily stopped the EEO & CRC investigation of Plaintiff's complaint by denying the investigator access to the General Counsel, Defendant Javdan, to other relevant information about the ERB (including the names of the individuals serving thereon), and to Administrator Barreto, whose statements were sought for the purposes of furthering the investigation. Defendant Javdan would not meet with the EEO investigator. Instead, through Defendant Galvan, Defendant Javdan communicated to the investigator he had removed himself from the selection process entirely, when in fact he had not. Does I-VI and/or Defendant Fortenberry, upon information and belief, in late 2004 and early 2005, informed investigator or his company that the case had been "settled" or was in the process of being settled when in fact, no such discussion with Plaintiff had ever taken place with respect to settlement at all. This statement to the investigator substantially delayed the investigation, and allowed selectee Levine to finish her SES probationary period without the proper review of her unlawful appointment. Apparently Defendant Barrera forwarded documents to the Office of Personnel certifying in writing to OPM that the appropriate

merit staffing procedures were followed for the selection in when in fact the certification was inaccurate.

Defendant Barrera authored a memorandum to Defendant Barreto that suggested that the ERB had discharged its statutory responsibility to review, rank and make written recommendations of the candidates for the Associate General Counsel for Financial Law and Lender Oversight position when he knew that the ERB never considered the candidates.

Defendant Javdan attempted to obstruct and frustrate an ongoing EEO & CRC investigation by, *inter alia*: (i) not meeting with or responding to direct and specific inquiries by the Investigator regarding the selection for the Associate General Counsel for Financial Law and Lender Oversight position in 2005; and (ii) by stating that he was not involved in the selection for the Associate General Counsel for Financial Law and Lender Oversight position. However, the Report of Investigation and other information obtained during the pendency of the investigation demonstrate Defendant Javdan was in fact involved with the selection process.

Defendant Benderson sat on the application screening panel and the inverview panel for the Associate General Counsel for Financial Law and Lender Oversight position when he knew or should have known that such dual role involvement in the selection process was improper and/or unlawful. Defendant Benderson further unduly influenced the interview panel to engage in activity that violated merit system principles by considering qualifications and experience of the Selectee which were not required for the position nor advertised as required in the job announcement.

Defendant Ford also authorized under her signature, the issuance of the FAD finding no discrimination, when she herself was a subject of the complaint and was involved in the tainted selection process.[5]

During the course of the investigation, defendant Fortenberry discovered that the selection did not comply with federal personnel regulations and policy, SBA standard operating procedures and U.S. laws, including, but not limited to 5 U.S.C. § 3393 and 5 C.F.R. § 317.501. Notwithstanding this fact, and the fact that Defendant Fortenberry is obligated under the rules of professional conduct to address such issues she had discovered[6], she continued to obstruct the EEO & CRC investigation and apparently did not, upon information and belief, take any action to correct or address the tainted the illegal selection process. Upon information and belief, defendants Fortenberry and/or Does I-VI, Galvan and/or Javdan advised the investigator or his company that the case had been settled, when settlement had not even been discussed with Plaintiff at the time.

Plaintiff elected to have a Final Agency Decision (FAD) issued in lieu of an administrative hearing before EEOC. That decision was issued by SBA's EEO & CRC and was signed on behalf of Defendant Ford on June 25, 2007. It was received by Plaintiff's Counsel on June 29, 2007. Plaintiff was issued a right to sue notice in the FAD.

---

[5] Rule 1.7(b) of the District of Columbia Rules of Professional Conduct states that a lawyer shall not represent a client with respect to a matter if the lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial business, property or personal interests.

[6] Rule 8.4- Misconduct- the District of Columbia Rules of Professional Conduct states that it is professional misconduct for a lawyer to engage in conduct that seriously interferes with the administration of justice.

Defendants Barrera, Benderson, Ford, Fortenberry, Javdan and Klein are attorneys admitted to the bars of various states but at all relevant times were subject to the District of Columbia Rules of Professional Conduct.

Defendants are represented by Attorneys Gary Fox and David Fishman of the SBA's Office of General Counsel. Mr. Fishman and Mr. Fox are attorneys in the Office of Litigation and report directly to Defendant Benderson.

Upon information and belief Defendant Fishman and possibly Mr. Fox applied for and were finalist candidates for the Associate General Counsel for Financial Law and Lender Oversight position, the position in question. Should this matter proceed to trial Mr. Fishman or Mr. Fox may be called as witnesses.

Upon information and belief, shortly after the selection was announced, Mr. Fishman spoke with a senior manager in the Office of the Inspector General regarding the selection process for the Associate General Counsel for Financial Law and Lender Oversight position that is the subject of this action.

Defendants Barrera, Benderson, Ford, Fortenberry, Javdan and Klein are attorneys. Defendants Barrera, Barreto, Galvan and Javdan are no longer employed at the United States Small Business Administration but were members of the Senior Executive Service at the SBA when the actions in question occurred. Defendants Benderson, Ford, Preston and Klein are currently employed as members of the Senior Executive Service at the SBA. Defendant Fortenberry is employed in an Acting Senior Executive Service position at the SBA.

**OPENING STATEMENT**

The Court should deny Defendants' Motion to Dismiss Plaintiff's claims against Defendants Barreto, Barrera, Benderson, Ford, Fortenberry, Galvan, Javdan or Klein's (collectively the Individual Defendants) and retain jurisdiction over all Counts in the Complaint for the following reasons:

1.      The Court has original subject matter jurisdiction over the claims alleged in all Counts of the Complaint.

2.      Litigation of Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 e-16 (c), (Title VII) does not preempt Bivens claims in the present case.

3.      Plaintiff has no other certain, adequate or effective remedy for the Individual Defendants tortious actions and violations of Plaintiff's constitutional rights.

4.      The Civil Service Reform Act (CSRA) Pub. L. No. 95-454, 92 Stat. 1111 (1978) (codified as amended in various sections of 5 U.S.C.) does not preclude Plaintiff's claims in Counts III through VI of the Complaint.

5.      The Individual Defendants are not entitled to any immunity for their conduct set forth in the Complaint.

**ARGUMENTS**

I.      THE COURT HAS SUBJECT MATTER JURISDICTION OVER ALL OF PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS AND THE MOTION TO DISMISS SHOULD BE DENIED.

A.      **Scope of this Court's Jurisdiction.**

The power of a federal court to grant relief not expressly authorized by Congress is firmly established. Federal courts have jurisdiction to decide all cases arising under the Constitution, laws, or treaties of the United States. See 28 U.S.C. §1331 (1976). This jurisdictional grant provides not only the authority to decide whether a cause of action is stated by a plaintiff's claim that she has been injured by a violation of the Constitution, but also provides the authority to choose among available judicial remedies in order to vindicate constitutional rights. Bush v Lucas, 462 U.S. 367, 374 (1983).

B.      **Title VII does not preempt Plaintiff's claims in Counts III through VI of her Complaint.**

Contrary to what Defendants would have this Court believe, Plaintiff is not attempting to pursue employment discrimination claims under other federal statutes or

13

directly under the Constitution. Through Counts III through VI of the Complaint,

Plaintiff seeks to redress the improper conduct of certain senior managers during the

selection process for an SES position and the subsequent investigation of the hiring

process. Furthermore, Counts III through VI in the Complaint are not an attempt to

redress the same basic injuries alleged in Counts I and II. In Ethnic Employees of the

Library of Congress v. Boorstin, 751 F.2d 1405, 1415 (D.C. Cir. 1985), this Court held

Title VII does not displace "claims for violations against which Title VII provides no

protection at all". See also Maglietti v. Nicholson, 517 F.Supp.2d 624, (D.Conn, 2007)

where the Court ruled Title VII did not preempt Bivens claims where substantive

violations were alleged other than those protected by Title VII. Further, in Stewart v

Evans, 275 F.3d 1126 (C.A.D.C. 2002), the Court held alleged conduct by members of an

agency's office of general counsel in refusing to cooperate with an EEOC investigation

resulting in a delay in the issuance of a final agency decision was not actionable

retaliation under Title VII because it had no impact on employee's grade, pay or benefits.

However, in Stewart, the Court of Appeals did find that other conduct by the defendants

was not personnel action covered by the CSRA and did not preclude a Bivens action.

Furthermore, in Trout v Lehman, this court held that the improper investigation of a

complaint is a claim about a procedural action rather than a condition of employment.

Therefore is not cognizable as a separate cause of action in a judicial proceeding under

Title VII. Trout v. Lehman 1983 WL 578 (D.D.C. Jul 07, 1983). However, Plaintiff

believes it is well established that an applicant's right to receive fair consideration in a

competition for a career competitive position under the civil service merit system is a

condition of employment.

As in the Stewart and Maglietti cases, the instant case presents claims for which Title VII provides no protection. Plaintiff is not merely trying to seek redress for the harm she experienced from a mishandled EEO investigation of whether Plaintiff was not selected for an SES position because of her race. The harm and denial of Plaintiff's rights addressed in Counts III through VI of the Complaint deal with the injury caused to Plaintiff as an applicant for a career position who was not given a fair opportunity to compete for the position. She was denied an opportunity to have her application fully and fairly considered by an executive resources board and officials as required by applicable laws, regulations and merit system principles. Apparently the SBA Executive Resources Board did not review or consider a single application for the position that is the subject of this action. Plaintiff seeks to remedy the fact that the selectee was illegally placed in a senior executive service position (and received all of the compensation and related benefits of career senior executive service status) as a result of inaccurate and misleading documents and other actions by the Individual Defendants. Essentially, Plaintiff is complaining about and seeking relief from the improper selection and the selection process that was revealed during the EEO investigators attempts to conduct an investigation of her employment discrimination claim. The improper conduct is actionable notwithstanding the outcome of the EEO investigation.

**C.    Plaintiff's claims in Counts III through VI of her Complaint are not precluded by judicial precedent or federal laws.**

Defendants cite the Supreme Court case <u>Bush v Lucas,</u> 462 U.S. 367 (1983), as authority for their position that the CSRA creates the only remedial framework for Plaintiff's non-Title VII claims. However, in <u>Bush</u>, the Supreme Court left open the possibility of creating Bivens type actions and remedies for violations of a federal employee's rights under the Constitution and federal law. In addition, the <u>Bush</u> ruling has been interpreted to recognize there is no indication that Congress intended the remedial provisions of the civil service rules to be a substitute for a Bivens action.

There is no indication in the CSRA or in its legislative history, that Congress would have an objection to Plaintiff's private remedy as a supplement to the express provisions in a Title VII action or other proceeding under the CSRA if an adequate remedy does not exist for illegal conduct against a federal employee or class of employees. There is no clear evidence or express language in the CSRA that Congress intended to preclude a Bivens action by the creation of the CSRA or that Congress has deemed the CSRA an equally effective remedy or substitute for recovery under the Constitution.

Moreover, judicial review of Plaintiff's claims would not frustrate the intent of Congress set forth in the CSRA. While Congress may have intended a Title VII action to serve as the exclusive remedy for the improper handling of a discrimination charge by the EEOC or even an agency as employer, that does not mean Congress intended to preclude

actions against individual federal employees who violated the federal legal rights of others.

> D.     **The statutory scheme of the CSRA does not offer Plaintiff an effective remedy for constitutional violations and serious misconduct of the type involved in the instant case.**

Plaintiff's claims are not fully cognizable within the civil service system. Defendants argue Plaintiff should file a complaint with the Office of Special Counsel (OSC). OSC is required to conduct and "investigate" claims of prohibited personnel practices, the scope of the investigation and any resolution of the violations uncovered is unclear. Additionally, because the Plaintiff's complaint regarding improper personnel practices arises out of and relates to a discrimination complaint, the Special Counsel will likely not initiate an independent investigation of this matter. According to OSC regulations and investigative policy, when a case involves a discrimination complaint, the Special Counsel will "normally avoid duplicative procedures" and will defer to the discrimination complaint procedures rather than initiating an independent investigation. See 5 CFR Section 1810.1.

In addition, according to 5 USC 1214, the Special Counsel is not required to proceed with an investigation if the Attorney General's Office is pursuing an investigation of Plaintiff's claim. Therefore, OSC may not investigate Plaintiff's claims because the United States Department of Justice is investigating Plaintiff's claims.

The Office of Personnel Management (OPM) regulations do not afford Plaintiff a remedy. OPM regulations state that an individual's initial appointment as an SES career appointee becomes final after the individual has served a one year probationary period. There is no right of appeal by applicants to OPM on SES staffing actions taken by Executive Resources Boards, Qualification Review Boards or appointing authorities. See 5 CFR § 317.503.

## CONCLUSION

Plaintiff is not alleging the EEOC mishandled plaintiff's discrimination complaint. Plaintiff is also not alleging the Agency or its private contract investigator mishandled or committed malfeasance in processing her discrimination complaint. Plaintiff is alleging that certain senior management officials acting outside the scope and of their employment engaged in actionable tortious conduct. The Individual Defendants failed to cooperate with the investigator as required under applicable regulations and their respective job requirements and certain Individual Defendants submitted inaccurate and misleading information to the another federal agency, the Qualification Review Board of the Office of Personnel Management. See 29 CFR 1614.108. The Individual Defendant's should not escape liability under the applicable civil rights laws and the Bivens precedent when they engaged in active defiance of their employer's desire and requirements that they comply with laws and regulations.

The Individual Defendants' conduct and ability to subvert and circumvent the established merit system laws and principals caused harm to the Plaintiff and other applicants for a competitive service position who were victimized by the Individual Defendants' conduct and scheme. The SBA should not be held accountable, the individuals, members of the senior executive service, including several attorneys should be held responsible.

Defendants maintain Plaintiff should file claims against the SBA with the Office of Special Counsel. However, that approach would be ineffective. The government and its citizens should not bear any expense for harm to employees and applicants for civil service positions that is caused by rogue employees. Therefore, a Bivens type remedy against the Individual Defendants in this case for exclusively personal independent improper conduct is appropriate and Plaintiff should be allowed to proceed with Counts III through VI in the Complaint.

For all of the above stated reasons, Plaintiff respectfully requests that the Motion to Dismiss is denied.

Dated: February 12, 2008                YOLANDA SWIFT

                                        By: _Yolanda Swift_

                                        Yolanda Swift

                                        Pro Se

                                        34 V Street, N.W.

                                        Washington, D. C. 20001

Tel:  (410) 499-2310

CERTIFICATE OF SERVICE

I hereby certify that on February 12, I served a copy of the foregoing Response to

Defendants' For Motion to Dismiss on the following party by mail:

James C. Luh

Trial Attorney

United States Department of Justice

Civil Division, Federal Programs Branch

20 Massachusetts Ave., NW

Washington, DC   20530

Attorney for Defendants

Yolanda Swift

Pro Se

## U.S. SMALL BUSINESS ADMINISTRATION

---

## REPORT OF INVESTIGATION

---

### I.   DESCRIPTION OF COMPLAINT

**Name of Complainant:**                    Yolanda V. Swift

**Case Number:**                            07-05-028

**Title and Grade of**                      Attorney Advisor/Assistant
**Complainant's Position:**                 General Counsel, GS-15

**Name and Location of Agency**
**or Unit Involved in Complaint:**          Office of the General Counsel
                                            U.S. Small Business Admin.

**Date of Alleged Discrimination:**         February 2005

**Kind of Discrimination Alleged:**         Race and Reprisal

**Condition Giving Rise to**
**Complaint:**                              Non-selection

### II.   DESCRIPTION OF INVESTIGATION

**Identity of Investigator:**               Charlester Williams
                                            DSZ
                                            1 Wadleigh Place
                                            Boston, MA 02127

**Date Report of Investigation**
**Submitted to Agency:**                    October 23, 2006

**Place of Investigation:**                 Washington, DC

**Dates of Investigation:**                 October 3, 2005 to
                                            October 2006

**Method of Investigation:**                On-site Interviews
                                            Written Interrogatories

*Ex 1*

### III. DESCRIPTION OF BASES AND ISSUES IN COMPLAINT

Whether the Complainant was discriminated against on the basis of race (African American) and reprisal (opposing practices made illegal by Title VII) when in February 2005, she was not selected for the position of Associate General Counsel for Financial Law and Lender Oversight.

Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998); Burlington Industries, Inc. v. Ellerth, 118 S.Ct. 2257 (1998); Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986).

### IV. SUMMARY

Yolanda V. Swift (African American, protected EEO activity), Complainant, is a GS-15 Attorney Advisor with the Department of Financial Law and Lender Oversight, Office of General Counsel, SBA. She has served in her position of record since March 2000 (Exhibit F2).

The Complainant states she applied for the position of Associate General Counsel for Financial Law and Lender Oversight, advertised under Vacancy Announcement No. SBA-SES-04-06. She states she was found qualified for the position and made the List of Best Qualified Candidates. She states she was not selected, however, and she believes her non-selection was because of her race and protected EEO activity (Exhibit F2).

Explaining the protected EEO activity that forms the basis of her reprisal claim, the Complainant states she managed the attorneys in the Office of Financial Law and Lender Oversight as the Acting Deputy Associate General Counsel, a position she served in from March 2000 to April 2003. She states around February 6, 2004, she registered a complaint with the General Counsel about the failure of management to provide a promotion to a black attorney on staff that she supervised, while providing promotions and hiring to other white attorneys under her charge. The Complainant states she was very vociferous about the black attorney not being promoted and being held to a different standard for attaining a promotion, standards that differed from the ones the white attorneys were being held to. The Complainant states she believes she was not selected for the SES position advertised under Vacancy Announcement No. SBA-SES-04-06 because she was being victimized for voicing

opposition to the unfair discriminatory practices that were
affecting one of the black employees under her charge. The
Complainant states she can only come to this conclusion,
given her superior qualifications for the SES position. In
that regard, she notes that for all of her years of
employment with SBA, she received the highest rating
possible, and she had the highest technical qualifications
of any of the candidates who applied for the subject
position (Exhibit F2).

The Complainant asserts that she was more qualified for the
advertised SES position than the white individual selected
(the "Selectee"). Speaking to the requirements of the
advertised position, the Complainant states the person
hired would be required to manage the Office of Financial
Law and Lender Oversight, which calls for a manager who has
expertise in many areas of the law. She states her legal
background was far more extensive than that of the
Selectee, both in the types of law they practiced before
joining the SBA and after joining the agency. The
Complainant argues that her broader legal experience was
more valuable to the announced SES position because the
incumbent is required to manage and resolve a broad array
of legal issues while heading the Office of Financial Law
and Lender Oversight (Exhibit F2).

The Complainant states she also had the necessary
managerial experience for the advertised SES position. She
states she had direct management responsibility for the
attorneys in the Office of Financial Law and Lender
Oversight for the immediate three and a half years before
the selection at issue. She states during that time, she
received the highest rating possible, with no hint of a
problem with her leadership abilities (Exhibit F2).

The Complainant states she also had higher educational
qualifications than the Selectee. She states they both have
a Juris Doctorate Degree, but she also has an advance
degree in Banking and Financial Institution Law. She states
this advanced degree proved valuable to the agency when she
was the manager for the Office of Financial Law and Lender
Oversight. She states the Selectee does not have a degree
beyond the Juris Doctorate Degree (Exhibit F2).

The Complainant states she is led to believe her race was a
factor in her nonselection for the SES position because she
served as the managing attorney in the Office of Financial
Law and Lender Oversight for over three and a half years

with no problems. She states she has seen her white
colleagues in the Office of General Counsel serve in
similar acting positions and go on to be selected into SES
positions. In her affidavit, the Complainant details the
promotions of certain white attorneys into SES positions
because they headed activities in the Office of the General
Counsel in an acting capacity. The Complainant further
notes that there has never been an African American
appointed to a nonpolitical SES position in the Office of
General Counsel (Exhibit F2).

The Contract EEO Investigator attempted to schedule an
interview with the selecting official who was identified by
the Complainant and by the investigative file as the SBA
Administrator, Mr. Hector Barreto. Having no success in
scheduling an interview with the Administrator, the
Investigator attempted to schedule an interview with
Mr. David Javdan, the SBA General Counsel, given that he
serves in both the Complainant and the selectee's chain of
command and could possibly speak to the qualifications and
abilities of both. The Investigator received a telephone
call from Mr. Stephen Galvan, the Staff/Chief Operating
Officer. Mr. Galvan informed the Investigator that there
would be no need to interview the General Counsel on the
selection at issue because the official had removed himself
from the selection process entirely. Mr. Javdan advised the
Investigator that the SBA Administrator alone made the
selection at issue and that he would meet with the
Administrator and arrange a meeting between the
Administrator and the Investigator. The agency ultimately
asked that the Administrator be provided written
interrogatories, which he would respond to by no later than
April 21, 2006. Accordingly, the Investigator forwarded to
the Administrator detailed interrogatories on March 29,
2006, to be answered by the agreed upon date in April.
Responses to the interrogatories were provided June 28,
2006. In responding to the interrogatories, the
Administrator represented that although he was the
selecting official of record for the Associate General
Counsel position advertised under Vacancy Announcement
Number SBA-SES-04-06-A, he simply signed off on and
ratified the selection decision/recommendation made by the
Executive Resources Board (ERB). The Administrator declared
that as he "does with all other SES selections, [he]
ratified the recommendation that was forwarded to him. He
states "in the five years with SBA, [he] has always adopted
the SES selection recommendations that have been forwarded

4

to him." The Administrator goes on to provide that he is
not in a position to speak to the Complainant or anyone
else's qualifications as they compare to the individual
selected because he was not aware of who else applied for
the SES position (Exhibits F3-F4).

Because the Administrator did not identify the members of
the board, the agency was asked to provide the names and
contact information of the ERB members so that they could
be interviewed. On August 28, 2006, the Agency responded to
the request for identification of the ERB by instead
identifying the individuals who made up the three-person
interview panel who interviewed and evaluated the
candidates and determined which candidates would be
referred to the ERB for further selection consideration.
The Agency has not, to date, identified the members of the
ERB.

candidate, including that of the Complainant or Ms. Nina

**EXHIBIT F8**

# MEMORANDUM

TO:        **FILE**

FROM:    **CONTRACT EEO INVESTIGATOR**

DATE:     **OCTOBER 12, 2006**

RE:       **CHRONOLOGY OF INVESTIGATION**

On August 28, 2006 the agency's representatives, Monique Fortenberry and David Gattis, informed the Investigator that they had learned that day that the ERB did not convene until after the selection at issue was made, and that it was their opinion that the Chairman of the ERB simply forwarded the recommendation of the Interview Panel to the Administrator for ultimate selection. The two representatives further advised that the Chairman of the ERB at that time, Mr. Michael Barrera, was no longer employed with the SBA and that they had made attempts to contact him for interview. Unable to produce Mr. Barrera, the agency representatives provided the Investigator with the testimony of Robert L. Gangwere, a Deputy General Counsel who was appointed to the 2004 ERB by the Administrator. Mr. Gangwere confirmed the agency representatives' representations that the selection at issue was made prior to the 2004 ERB being convened and that the ERB Chair simply forwarded to the Administrator for selection the recommendation of the Interview Panel.

*Ex 2*

**EXHIBIT F14**

DATE:        November 16, 2004

TO:          Hector V. Barreto
             Administrator

             Stephen Galvan
             Chief of Staff

FROM:        Michael Barrera
             Chief, Executive Resources Board

SUBJECT:     Executive Resources Board Referral for the position of Associate
             General Counsel for Financial Law and Lender Oversight, ES-905
             (SES Career Reserved)

A panel comprised of three SES managers interviewed six candidates
for this position. The panel evaluated the executive managerial and technical
qualifications of the eligible candidates along with the interview results in
accordance with the Agency's Senior Executive Service Merit Staffing
Procedures. Based on this evaluation, the following candidates are referred for
your consideration.

<u>Superior Applicant</u>
Nina Levine

<u>Highly Qualified</u>

<u>Well Qualified</u>

Yolanda Swift

<u>Qualified</u>

Please feel free to call me should you have any questions or need additional
information.

$E2$

## Gangwere, Robert L.

| | |
|---|---|
| From: | Gangwere, Robert L. |
| Sent: | Monday, November 29, 2004 8:41 AM |
| To: | Boyd, Pat |
| Cc: | Brechbiel, Richard; Javdan, David A. |
| Subject: | Selection of the SES Associate General Counsel Position |

Pat,

David Javdan asked me to tell you that he is fine with the selection and requests that you proceed with the offer a.s.a.p. It is our understanding that you have already forwarded the paperwork to OPM. If not, please do so immediately. David is very anxious to finalize this process.

Thanks for all your help!

Robert

----Original Message-----
From: Boyd, Pat <Pat.Boyd@sba.gov>
To: Javdan, David A. <David.Javdan@sba.gov>
CC: Brechbiel, Richard <Richard.Brechbiel@sba.gov>
Sent: Mon Nov 22 10:39:52 2004
Subject: Selection for the SES Associate General Counsel Position

Hi Mr Javdan, the interview panel recommended Nina Levine for the SES Assoc Gen Counsel position, and the selection has been approved by the Administrator and has been forwarded to the Qualifications Review Board at OPM. Before I notify Ms Levine of her selection and make her a tentative offer pending OPM's approval, I want to let you know and if you have any questions or concerns you can call me on 202-205-6085 or send me an email. Thanks

Pat Boyd
Human Resources Specialist
Office of Human Capital Management
202-205-6085

1

Ex 4



# SBA Information Notice

| **TO:** All SBA Employees | **CONTROL NO.:** 3000-2393 |
|---|---|
| **SUBJECT**: New Appointments to the Executive Resources Board | **EFFECTIVE:** 7/22/2004 |

The Executive Resource Board (ERB) is a group of SBA executives appointed to advise on a broad range of personnel management issues involving all executive personnel except for those employed by the Office of the Inspector General. The ERB manages the merit staffing process for career Senior Executive positions and advises on executive deployment, development, performance awards, pay administration, and criteria for nominating executives for Presidential Rank Awards.

Effective immediately, I have appointed 11 members to the ERB including a new Chair and Vice Chair to serve 2-year terms on this prestigious board. As the need arises, I may appoint other individuals to serve 2-year terms. The membership is as follows:

1. Chair – Michael Barrera (Ombudsman)
2. Vice Chair – Stephen Galvan (Chief Operating Officer and Acting Chief of Staff)
3. Allegra McCullough – (Associate Deputy Administrator for Government Contracting and Business Development)
4. Cheryl Mills – (Associate Deputy Administrator for Entrepreneurial Development)
5. David Javdan – (General Counsel)
6. Lewis Andrews – (Associate Deputy Administrator for Management and Administration)
7. Thomas Dumaresq – (Chief Financial Officer)
8. Janet Tasker – (Associate Administrator for Lender Oversight)
9. James Rivera – (Associate Administrator for Financial Assistance)
10. Francisco Marrero – (District Director, South Florida)
11. James Cantlon – (Deputy General Attorney)

The Chief Human Capital Officer, who serves as Executive Director, and the Assistant Administrator for Equal Employment Opportunity and Civil Rights, who serves as the Equal Opportunity Advisor, are ex-officio members of the ERB.

Hector V. Barreto
Administrator

*Ex-45*

SBA Form 1353.3 (4-93) MS Word Edition; previous editions obsolete
Must be accompanied by SBA Form 58